## Case No. 13,139.

### SNELL et al. v. The INDEPENDENCE.

[Gilp. 140.] [1]

District Court, E. D. Pennsylvania. Jan. 8, 1830.

SEAMEN—WAGES—FORFEITURE FOR ABSENCE—DEDUCTIONS—DEMURRAGE.

1. To subject a seaman to the forfeiture of his wages, for absence, according to the provisions of the act of 20th July, 1790 [1 Stat. 131], an entry of the fact must have been made in the log book, by the mate. stating the name of the seaman, the date of the absence, and that it was without leave of the master.

[Cited in The John Martin, Case No. 7,357.]

2. A seaman who returns to a vessel. after a week's absence without leave, and continues during the rest of the voyage. is to receive his wages at the rate originally contracted for, in the shipping articles, unless a new contract is explicitly made.

[See The Almatia, Case No. 254.]

3. The charge for a person necessarily employed in the place of a seaman, absent without leave, is to be deducted from his wages.

4. The police costs and charges incurred by a seaman, for improper conduct while on shore, are to be deducted from his wages.

5. Where a vessel is detained by the refusal of the seamen to work. they are to be charged with the demurrage. and the proportion of each seaman who refused is to be deducted from his wages.

[This was a libel for wages by John Snell and Joel A. Baker against the brig Independence.]

Mr. Grinnell, for libellants.

J. R. Ingersoll, for respondent.

HOPKINSON, District Judge. The libellant, Baker. shipped on board the brig Independence, at Philadelphia, on the 9th April, 1828, and proceeded in her from Philadelphia to Gibraltar, thence to Pernambuco, thence to Trieste, thence to Swinemunde, thence to Bordeaux, and thence back to Philadelphia, at fifteen dollars a month. The libellant, Snell, states that he shipped on board the said brig at Trieste, on the 14th May, 1829, to perform a voyage from Trieste to Swinemunde, and elsewhere, and thence to Philadelphia, at eight dollars a month. He says that he proceeded on the said voyage from Trieste to Swinemunde. thence to Bordeaux, and thence to Philadelphia, where the said brig arrived, on the 27th November, 1829. Annexed to the libel is an account stated by Snell. in which he charges the brig with wages, from the 14th May to the 27th

[1] [Reported by Henry D. Gilpin, Esq.]

November, 1829, at eight dollars, amounting to fifty-one dollars and forty-seven cents, and allows sundry credits to the amount of twenty-two dollars and seventeen cents, leaving a balance in his favour of twenty-nine dollars and thirty cents. Baker also annexes an account, in which he charges the brig with wages, to the amount of two hundred and ninety-four dollars, and allows credits for ninety-eight dollars and sixty cents, leaving a balance in his favour of one hundred and ninety-five dollars and forty cents.

The master of the brig. William Fennel, has filed an answer to these claims, in which he admits that the libellants shipped for the voyage. and at the rates of wages they have respectively set forth; but he denies that they faithfully performed their duty. On the contrary, he charges that their conduct was highly disobedient, refractory, and mutinous; that Baker, without authority, and against all order. twice ran away from the brig, while lying at Gibraltar; on one occasion, taking with him the boat of the brig, and on another, making his escape from confinement. to which he had been subjected in consequence of his first absconding. That while at Pernambuco, being drunk, he used gross and insulting language to the captain, and voluntarily jumped overboard and swam to the reef. That while at Trieste, he deserted from. the brig, and abandoned his duty, of which an entry was made in the log book, in these words: "Monday, April 27th, 1829, John Bates," (agreed to mean the libellant, Baker,) "one of the men, off his duty." That while at Swinemunde, he frequently went on shore without leave, and contrary to express orders; and that on one occasion, both Baker and Snell, so being on shore without license, conducted themselves in so disorderly and riotous a manner, that they were placed under arrest by the civil authorities of Swinemunde, and imprisoned, the expenses of which, and of hands employed in their absence, the respondent was compelled to pay. The respondent further answers, that while at Elsinore, and the wind fair to get under way, the libellants. in disobedience of orders, refused to heave the anchor, or to perform duty; that, in defiance of all authority, they mutinously persisted in their resolution; and that Baker raised a handspike against the respondent. That, by reason of this mutiny, the favourable moment was lost, and the brig detained for some time at Elsinore, by contrary winds, subjecting the respondent to a heavy charge of demurrage. The respondent denies that the libellants are entitled to any of the wages claimed by them; but, on the contrary, are severally indebted to the brig.

An account is annexed to this answer. by which it appears there were due to Baker, on the 27th April, 1829, the day of his alleged desertion, eighty-one dollars and three cents; which the respondent contends was wholly forfeited by his desertion. In this account Baker is charged only with cash paid to him, or for him. It then credits him with wages, at eight dollars a month, from the 5th May to the 27th November, 1829, amounting in the whole to fifty-three dollars and eighty-seven cents, and charges him with various items, during that time, amounting to eighty-four dollars and forty-three cents. leaving a balance against him of thirty dollars and fifty-six cents.

The facts stated in the answer are substantially proved by the deposition of John Smith, the first mate of the brig; and the truth of them has not been materially controverted. An additional fact appears by this testimony, corroborated by a writing given by Baker; it is, that while he was absent from the brig, at Trieste, he became indebted to one John Wilkinson in the sum of twenty-four dollars, which Baker, by the writing, agreed should be deducted from his wages, afterwards to be earned.

The charges of misconduct made against Baker are supported by the evidence of the mate, and have not been disproved by any evidence on the part of the libellant; indeed, he has produced no testimony whatever. The argument has turned on the consequences of his misbehaviour, in the several instances mentioned; and whether or not, they, or any of them, have worked a forfeiture of his wages, or what amount of compensation may be taken from his wages to answer them.

The credits allowed to the ship, by Baker. are given in gross, amounting to ninety-eight dollars and sixty cents, including the hospital duty, which account ·he states only on ·his recollection. The total charges against him, in the captain's account, independent of the claims made for his misconduct, amount to one hundred and thirty-two dollars and eighty-three cents, and seem not to be questioned. The cash payments, therefore, charged to Baker, are presumed to be correct.

By taking the allowances claimed by the master as forfeitures, or deductions of wages. more or less, and disposing of them in their order of time, we shall come, in the most plain and satisfactory way, to the result. At Gibraltar, Baker appears to have conducted himself with great insubordination, leaving the vessel with an evident intention of deserting her. He was. however, brought back, and punished, by confinement in irons. He is not entered by name in the log book for this offence; nor has the captain in his account made any charge against him for any loss or expense incurred by it. The same may be said of his insulting violence when drunk at Pernambuco, when he jumped overboard and swam to a reef, but was brought back and returned to his duty. which he performed without complaint. until the arrival of the brig at Trieste. The real matters in controversy began there. Every thing up to that time seems to have been settled by punishment or forgiveness. On the 27th April,

1829, at Trieste, Baker went on shore, and did not return until the 5th May; and this absence is asserted to have been without leave, and to have incurred a forfeiture of all the wages due at that time. Was this absence without the leave of the officer commanding the vessel? It is nowhere said so, either in the log book, or by the mate in his examination at this trial. That witness says that "on the 26th April, Baker went on shore with his permission, that he returned, and said he had gone to ask his discharge from the captain, who said he had no objection if the consul was willing; he went on shore again, and did not return until the 5th May." There is no direct allegation that this going on shore, which is the one relied upon for the forfeiture, was without leave. But if it might be inferred from the evidence of the mate, and the circumstances, is it sufficient? I think not. The act of congress of 20th July, 1790 (1 Story's Laws, 104; [1 Stat. 132]), gives great advantages to the owner of a vessel in making his log book the evidence of a fact, which acquits him altogether of a debt; and courts have very properly held him strictly to the proof required. The truth is, it is a highly penal act. We must not look at a forfeiture of a seaman's wages, with regard merely to the amount due to him, which is generally small, but consider it rather as his all; as the sole fruit of long, laborious, and dangerous services; as the essential means of procuring for him the necessaries and comforts of life, while on shore, and, it may be, in sickness, or with a family depending upon it for their bread. Seamen, as a class of men, are entitled to receive peculiar indulgence. Their character, their education, the very nature of their employment, engender habits of recklessness and occasional violence, which other persons are not exposed to; much of their merit and usefulness is connected with their faults, and even with their vices.

When the master of a vessel intends to insist on the forfeiture of a seaman's wages, for a desertion for more than forty-eight hours, it is required that the absence shall be without leave of the master; and that the mate shall make an entry in the log book of the name of the seaman, on the day on which he shall absent himself. The entry must contain all that is necessary to incur the forfeiture. Of this, nothing is more essential than that the absence was without leave of the commanding officer of the vessel. The law is settled by several decisions, that it is not sufficient to state in the log book that the seaman was absent; but it must also be stated, whether it was with, or without leave; stating that the seaman left the ship is not sufficient. In this case the entry is no more than that the libellant was "off duty;" but where, whether in the ship, or on shore, and wherefore; whether with, or without leave, whether on account of sickness, or other justifiable cause, does not appear. As a proper entry in the log book is indispensable evidence of a

desertion, for which a forfeiture of wages is claimed, and as no such entry was here made, the forfeiture cannot be ordered.

On the 5th May, at Trieste, Baker returned to the brig, after an absence of a week, and performed duty as a seaman. Another question here has been controverted by the parties. The master insists that he came on a new contract, and is entitled from that day to wages only at the rate of eight dollars a month, the amount given to other seamen at Trieste. This pretence is founded on the evidence of the mate, that the captain ordered him to tell Baker that he was no longer on wages, and he did so. But can this be sufficient to annul the original contract, by the shipping articles; and to make a new implied contract in the place of it? When this was told to Baker does not clearly appear, and no assent to it on his part is pretended. No new contract was formally made in the shipping articles; nor any entry made on them, or elsewhere, of the cancelling of Baker's original contract. It therefore stands now, as it did in the beginning. It would be too much to destroy it, and set up another on such evidence as is here produced. The mate does not insinuate that any new contract was made for eight dollars a month, or any other sum; and if wages had happened to be twenty dollars a month at Trieste, we cannot believe the master would have thought Baker entitled to them, on what is testified by the mate. The answer expressly admits that the libellants shipped for the voyage, and at the rate of wages set forth in the libel; and no other contract is averred or put in issue by the answer. I must, therefore, consider Baker as returning to the brig on his first contract; the only one ever made between him and the master of the vessel.

The charge of one dollar and fifty cents, for a man hired in Baker's place, is a proper charge. So also, the charge of four dollars and eighty cents for cash paid the police officers and prison expenses at Swinemunde.

Baker is charged with twenty dollars, as his one third part of the demurrage, for detaining the brig two days at Elsinore; where, when the vessel was ready to sail, the mate says, "the men refused to heave the anchor," Baker being one of them. In his cross examination the mate speaks generally of the crew being guilty of this disobedience. In his deposition he designates by name, only Baker and Snell. In the log book the name of a third seaman is introduced. The master, in his account, has divided the demurrage among the three, charging the present libellants, Baker and Snell each with one third. I wish the mate had been more explicit on this subject; but I do not think his expressions of the men and the crew, necessarily embrace every individual on board in that capacity. Certainly both Baker and Snell were prominent in this, as in other scenes of misconduct, and no injustice is done to them in the charge made on this account. Baker is also chargeable with

the twenty-four dollars which he ordered to be paid for him to John Wilkinson at Trieste.

Baker's account settled on these principles will stand:

Dr. Wages from 9th April, 1828, to
    27th November, 1829, at $15.. $294 00
Cr. By cash payments, as
      per account ........ $132 83
    Charges allowed against
      him ...............     51 13
                          ———— 183 96
                                ————
      Amount due to Baker....... $110 04

To Snell there is nothing due.

Decree. That Joel A. Baker recover the sum of one hundred and ten dollars and four cents, and that the libel of John Snell be dismissed.